**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **CALVIN WAYNE SMITH, 1370784,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:09-CV-1314-L |
| ) | |
| **RICK THALER, Director TDCJ-CID,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner challenges his convictions for possession of a controlled substance with intent to deliver, namely cocaine, in an amount more than four grams but less than 200 grams, and unlawful possession of a firearm by a felon. *State of Texas v. Calvin W. Smith*, Nos. F-0526049-T and F-052048-T (283rd Jud. Dist. Ct., Dallas County, Tex., May 11, 2006). Petitioner was sentenced to eighteen years confinement on the offense of possession of a controlled substance with intent to deliver, and seven years confinement on the offense of unlawful possession of a firearm by a felon, to run concurrently.

On November 13, 2007, the Fifth District Court of Appeals affirmed the convictions and sentences. *Smtih v. State*, Nos. 05-06-00803-CR and 05-06-00804-CR (Tex. App. – Dallas,

2007). Petitioner did not file a petition for discretionary review.

On May 14, 2008, Petitioner filed state habeas petitions challenging both convictions. *Ex parte Smith*, Nos. 71,453-01, -02. On February 18, 2009, the Court of Criminal Appeals denied the petitions without written order on the findings of the trial court.

On July 7, 2009, Petitioner filed the instant § 2254 petition. He argues:

1. The evidence used against him was obtained by an unconstitutional search and seizure;

2. The prosecutor failed to disclose favorable evidence;

3. He received ineffective assistance of counsel when counsel failed to:

    (a) properly investigate the cases or pursue discovery;

    (b) move for a continuance or mistrial upon untimely notice of destroyed evidence; and

    (c) move for a continuance upon untimely notice that the state intended to seek a deadly weapon finding.

On November 20, 2009, Respondent filed his answer. On December 28, 2009, Petitioner filed a reply. The Court now determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> Garland police officer D.M. Morrow testified that there had been trouble with drugs, thefts, and robberies at a Motel 6 near the intersections of Broadway and Interstate 30, in Dallas, Texas. In response to requests from motel management, officers of the Garland Police Department increased their presence in the area. . . . Morrow would check the license plate numbers of cars in the motel parking lot to see if their owners had any warrants . . . . On March 7, 2005, Morrow ran a computer search on [Petitioner's] license

plate and learned he was wanted on misdemeanor warrants from Garland and Mesquite. Morrow also learned [Petitioner] was staying in room 307 and was the only person registered to that room. Because Morrow was dealing with the arrest of another suspect, he asked Garland police officers W.J. Nies and Ed White to arrest [Petitioner] for the outstanding warrants.

    Nies and White went to room 307 accompanied by another Garland police officer, Shara Watson. After they knocked on the door, [Petitioner] opened the door, verified that his name was Calvin Smith, and acknowledged that there was a warrant from the City of Garland for his arrest. . . . When Nies asked if the officers could enter the room, [Petitioner] said they could "come on in." As [Petitioner] was standing between the two beds putting on his pants, the officers saw him use one foot in an attempt to kick or push a black bag underneath the bed. White recalled that [Petitioner] was trying to kick the bag under the first bed, which was the bed farthest from the bathroom. When one of the officers asked [Petitioner] what he was trying to kick under the bed, [Petitioner] said "Nothing." . . . .

    Nies retrieved the bag and opened it. Inside the bag, he saw the butt of a revolver sticking out of a purple "Crown Royal" bag. The gun was a loaded .357 handgun, and there were additional rounds of ammunition in the "Crown Royal" bag. In a separate black bag, the officers found cocaine in powder form and drug paraphernalia. The paraphernalia included a sifter, a knife, a cord, two scales and plastic "baggies." There was no luggage tag or name on either bag and the officers found no photo identification or anything with [Petitioner's] name on it in the motel room.

    After [Petitioner] was placed in the squad car, the officers searched the room. There was no one else in the room with [Petitioner] and the officers did not find any clothes apart from those belonging to [Petitioner]. Only the second bed, the one near the bathroom, appeared to have been slept in.

    . . . . Kay Davis, a chemist with the Texas Department of Public Safety crime lab, analyzed the substances recovered from the motel room and [Petitioner's] pants pocket. The substance found in the motel room was cocaine and weighed 4.45 grams. The substance found in [Petitioner's] pants was also cocaine and weighed 0.03 grams.

    Detective David Potts [testified] [t]he powder cocaine seized from room 307, which weighed 4.45 grams, contained forty-four individual doses of cocaine and had a "street value" of $440. If a cutting agent was added, the cocaine would weigh approximately nine grams and have a "street value" of $900. Potts also recognized the drug paraphernalia seized from room 307 . . . . [Potts] also claimed the amount of drugs and drug paraphernalia seized in this case was more consistent with someone selling cocaine than using it. . . .

    After the State rested, [Petitioner] testified that, in March 2005, he was working

primarily for a temporary agency, Labor Ready, doing light industrial work. On March 6, 2005, he checked in at Motel 6 at approximately 10:30 or 11:00 p.m. . . . [Petitioner] claimed that a friend named "Mario" asked him to rent the motel room so they would be closer to a job location. [Petitioner] said he rented the room and Mario met him there; both men had keys to the room. [Petitioner] did not know Mario's last name. Once Mario arrived at the motel, [Petitioner] visited his child's mother and spent the night with her. When he returned to the motel between 7:30 and 8:00 a.m. the next morning, Mario was not in the room, but he had left a note. [Petitioner] also noticed five beer bottles in the room.[1]

[Petitioner] was sitting on the bed and talking on his cellular telephone when he heard the door "rattling," so he hung up the phone. [Petitioner] went to the door, saw three police officers and the woman from the front desk, and opened the door slightly. Nies pushed against the door and "just kind of forced his way in the room." When [Petitioner] asked Nies why he forced his way into the room, the officer said that if [Petitioner] had "taken care of his business," he would not have had to come into the room. After he entered the room, Nies said he had a warrant for [Petitioner's] arrest for not wearing a seat belt. . . .

\* \* \*

[Petitioner] claimed he never saw a black bag in the room and was not even aware of the black bag until he heard one of the officers say "something was wrong with the room." [Petitioner] also denied that he tried to kick any black bag under the bed. After the female officer took him downstairs, Morrow asked [Petitioner] if he knew anything about drugs and guns being present in the room. [Petitioner] said he "knew nothing of it." . . .

[Petitioner] claimed he did knowingly possess cocaine or a firearm in room 307 of the Motel 6. He also said he did not know anything about the "baggie" of drugs found in his pants. [Petitioner] suggested the "baggie" was planted, pointing out that Watson and Nies emptied his pockets before he reached the jail. [Petitioner] also said Mario did not have a black bag when came to the motel room. He denied telling Nies that the black bag belonged to someone else.

[Petitioner] admitted that when he checked into the motel, he did not put anyone else's name on the motel registry. He said that he informed the front desk someone else would be staying in the room, but it was not written in the motel registry. . . .

\* \* \*

---

[1]The officers did not recall seeing any beer bottles in the room and they did not find a note or piece of paper.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**                Page -4-

> The jury found [Petitioner] guilty in both the drug and gun cases and answered the question concerning the deadly weapon in the affirmative. . . .

*Smith v. Texas*, Nos. 05-06-00803-CR and 05-06-00804-CR (Tex. App. – Dallas, 2007) at 1-7.

### III.  Discussion

**1.     Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)     An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.

**2.     Search and Seizure**

Petitioner argues his convictions were the result of an unlawful search and seizure.  He

claims officers forced their way into his motel room and that officers went beyond the scope of the arrest warrant when they uncovered the gun and drugs.

A federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. *Stone v. Powell*, 428 U.S. 465, 493-95 (1976). This rule applies to both unlawful arrest claims and illegal search and seizure claims. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005). The Fifth Circuit has held that "an opportunity for full and fair litigation" means just that – an opportunity. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*; *see also Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). A habeas petitioner must plead and prove that the state court proceeding was inadequate in order to obtain post-conviction relief in federal court. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).

In this case, Petitioner filed a motion to suppress this evidence. After a hearing, the trial court denied the motion. (Clerk Record at 4.) On direct appeal, Petitioner challenged the denial of his motion to suppress. The Fifth District court denied this claim. *Smith v. State*, Cause Nos. 05-06-00803-CR and 05-06-00804 at 7. The state court clearly provided Petitioner with the opportunity for a full and fair hearing on his Fourth Amendment issues. These claims are therefore barred from federal habeas review.

3.   **Brady Violation**

Petitioner argues the state destroyed evidence in violation of *Brady v. Maryland*, 373

U.S. 83 (1963).

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. *Brady*, 373 U.S. at 87. Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant. *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).

In this case, the record shows the state mistakenly destroyed the drug paraphernalia, including a sifter, knife, cord, two scales, and empty plastic baggies. (Trial Tr. Vol. 4 at 35-38.) This evidence was destroyed when the police department implemented a new policy to create more storage in the property room. (*Id*.) At the time of trial, only photographs of the drug paraphernalia were available, but there were no photographs of the empty baggies. Petitioner states the drug paraphernalia could have been tested for fingerprints had it not been destroyed.

Petitioner has failed to show this evidence was material or exculpatory. Even if this evidence did not have Petitioner's fingerprints on it, Petitioner has failed to show there is a reasonable probability the outcome of the trial would have been different. Petitioner was not charged with, or convicted of, possession of drug paraphernalia. This claim is without merit.

**4**.     **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

"every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*.  "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**(A)    Investigation**

Petitioner argues his counsel was ineffective because counsel failed to pursue discovery, inspect seized evidence, and interview important witnesses.

On state habeas review, defense counsel submitted an affidavit responding to Petitioner's claims.  Defense counsel stated:

> The only fact witnesses in this case were [Petitioner] and the police officers. [Petitioner], once we completed voir dire raised the issue of two other witnesses.  One was a gentleman he had met "around" and from time to time they would car pool together for temporary jobs. [Petitioner] had no address for him.  He told me that one of the ladies who worked at the hotel might know him.  I personally went out to the hotel and no one could give me any information. . . .
>
> [Petitioner] stated there was a cleaning lady who was in the vicinity of the room and might have witnessed something while the officers were arresting him. . . . I went to the Motel Six (6), the lady on duty that night was no longer employed and had left no forwarding information.

(*Ex parte Smith* at 60-61).

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**            Page -8-

Petitioner does not state how the testimony of the motel clerk would have benefitted his case, nor has he submitted any affidavits or other evidence that this clerk, or any other possible witness, would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . .").

Petitioner also claims his counsel only met with him once before trial. Counsel submitted an affidavit on state habeas review stating he met with Petitioner three times before trial. (*Id*. at 60.) Petitioner has failed to state how further meetings with his counsel would have changed the outcome of his trial. Petitioner argues his counsel failed to visit the scene of the crime. In his affidavit, however, defense counsel stated that he personally visited the crime scene. (*Id*. at 60.) Petitioner claims his counsel failed to conduct discovery and forensic testing of evidence. It appears Petitioner is arguing his counsel should have tested the drug paraphernalia for fingerprints before it was destroyed. Petitioner, however, has failed to show there is a reasonable probability that the result of his trial would have been different had counsel tested the drug paraphernalia for fingerprints. These claims should be denied.

**(B)  Continuance/Mistrial**

Petitioner argues his counsel was ineffective because counsel: (1) failed to move for a continuance based on untimely notice that the state intended to seek a deadly weapon finding; and (2) failed to move for a continuance or mistrial based on untimely notice that the state mistakenly destroyed the drug paraphernalia evidence.

**(1)    Deadly Weapon**

The record shows that on May 4, 2006, the state filed its notice of intent to seek a deadly weapon finding. (Court's Record at 42.) Jury selection began on May 9, 2006, and the trial started on May 10, 2006. (Trial Tr. Vols. 3 and 4.) On direct appeal, the court stated it had no "definitive rule" for timeliness of the notice. *Smtih v. State*, Nos. 05-06-00803-CR and 05-06-00804-CR at 7. The court further noted that Petitioner made no claim that he was surprised by the notice and that he had knowledge of the firearm because he was charged with possession of the firearm. *Id.* Likewise, this Court finds Petitioner had knowledge of the firearm because of the firearm charge.

On state habeas review, defense counsel submitted an affidavit stating: "There was absolutely no testimony which [Petitioner] or I did not have advanced knowledge of. There was no evidence presented which we did not have advanced knowledge of." (*Ex parte Smith*. at 61.) Petitioner also failed to show how he was prejudiced by the failure to seek a continuance. Petitioner has not stated how a continuance would have benefitted the defense in relation to this issue. This claim should be denied.

**(2)    Evidence Destruction**

Petitioner also argues his counsel should have filed a motion for continuance or mistrial due to untimely notice that the drug paraphernalia had been destroyed. Defense counsel stated in his affidavit on state habeas review that he and Petitioner had advanced knowledge of all evidence presented at trial. (*Id.* at 61.) Petitioner has failed to show his counsel was not provided timely notice that the drug paraphernalia evidence was destroyed. Petitioner has also failed to show his counsel was ineffective for failing to file a motion for mistrial or continuance

regarding this evidence. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

**5.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 27th day of March, 2012.

_____
**PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).